```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


JEFFREY GALLO, et al.         )
                              )
           Plaintiff,         )    CIVIL ACTION NO.
                              )    10-10260-DPW
      v.                      )
                              )
ESSEX COUNTY SHERIFF'S        )
DEPARTMENT,                   )
                              )
           Defendant.         )
                              )
                              )
```

MEMORANDUM AND ORDER
March 24, 2011

Plaintiffs bring this action under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") against their employer, the Essex County Sheriff's Department (the "Sheriff's Department" or the "Department"), alleging that the Department has violated the FLSA by failing accurately to calculate plaintiffs' "regular rate" of pay, resulting in underpayment for work performed in excess of forty hours per week.[1]  The Sheriff's Department moves to dismiss, contending it is entitled to immunity from this suit by virtue of the Eleventh Amendment to the United States Constitution.

---

[1] Plaintiffs' Amended Complaint also alleged, in Count II, violations of the Massachusetts Overtime Law, Mass. Gen. Laws ch. 151.  The parties agreed by stipulation to the dismissal of Count II.

## I. BACKGROUND

### A. *Factual Background and Plaintiffs' Allegations*

The Defendant is the Essex County Sheriff's Department, an instrumentality of the Commonwealth of Massachusetts principally located in Middleton, Massachusetts. Am. Compl. ¶ 95. The Plaintiffs are unionized corrections officers employed by the Sheriff's Department. *Id.* ¶ 97. According to the Plaintiffs, the terms and conditions of their employment, including wages and other forms of remuneration, have been and are established through collective bargaining agreements between the Sheriff's Department and the Essex County Correctional Officer Association ("ECCOA"), a labor organization. *Id.* ¶ 100.

The Plaintiffs allege that the Sheriff's Department has willfully violated the FLSA by failing to include all required remuneration in its FLSA "regular rate" determination. *Id*. ¶ 100; *see* 29 U.S.C. § 207(e). The FLSA, among other things, sets the minimum wage and maximum hour per workweek for employees subject to the Act. *See* 29 U.S.C. §§ 206-07. Plaintiffs contend that the Department's inaccurate calculation of the "regular rate" has resulted in underpayment of overtime wages mandated by the FLSA, 29 U.S.C. § 207. Plaintiffs seek damages in the amount of any underpayment, as well as liquidated damages, interest, and attorneys' fees.

### B. *Legislation Abolishing Essex County*

It is undisputed that the Sheriff's Department is an instrumentality of the Commonwealth.  Am. Compl. ¶ 95; Am. Answer ¶ 95.  In 1999, the Massachusetts legislature abolished the governments of six counties, including Essex County, Act of Nov. 16, 1999, ch. 127, as codified in M$_{\text{ASS}}$. G$_{\text{EN}}$. L$_{\text{AWS}}$ ch. 34B § 1.  Under the applicable legislation, all of Essex County's "functions, duties and responsibilities . . . including, but not limited to, the operation and management of the county jail and house of correction . . . [were] transferred . . . to the commonwealth."  M$_{\text{ASS}}$. G$_{\text{EN}}$. L$_{\text{AWS}}$ ch. 34B, § 4.  In addition, the Commonwealth assumed "[a]ll valid liabilities and debts of" Essex County, *id.* § 5, and obtained all of its "rights, title and interest in real and personal property," *id.* § 6(a), and "[a]ll valid leases and contracts," *id.* § 7.

The sheriff of each abolished county became "an employee of the commonwealth with salary to be paid by the commonwealth." *Id.* § 12.  Each employee of a sheriff became an "employee" or "public employee" as defined in M$_{\text{ASS}}$. G$_{\text{EN}}$. L$_{\text{AWS}}$ ch. 150E, § 1, and the sheriff became an "employer" or "public employer."  *Id.* § 13.[2]  The legislation included the following language addressing

---

[2] Under Massachusetts Law an "employee" or "public employee" is "any person in the executive or judicial branch of a government unit employed by a public employer," with certain exceptions.  M$_{\text{ASS}}$. G$_{\text{EN}}$. L$_{\text{AWS}}$ ch. 150E, § 1.  An "employer" or

the continuity of employment for the Sheriff's Department employees:

> Notwithstanding the provision of any general or special law or rule or regulation to the contrary, . . . employees of the sheriff of an abolished county, employed immediately before the transfer date . . . shall be transferred to the commonwealth with no impairment of employment rights held immediately before the transfer date without interruption of service, without impairment of seniority, retirement or other rights of employees, without reduction in compensation or salary grade and without change in union representation.  Any collective bargaining agreement in effect immediately before the transfer date shall continue in effect and the terms and conditions of employment therein shall continue as if the employees had not been so transferred.

*Id.* § 14(a).

## II. STANDARD OF REVIEW

In considering the Sheriff's Department's motion to dismiss for lack of subject matter jurisdiction, I "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff[s] the benefit of all reasonable inferences," but remain "mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (internal quotation omitted).

---

"public employer" is "the commonwealth acting through the commissioner of administration, or any county, city, town, district, or other political subdivision acting through its chief executive officer, and any individual who is designated to represent one of these employers and act in its interest in dealing with public employees."  *Id*.

4

### III.  ANALYSIS

In its motion to dismiss, the Sheriff's Department invokes the principle of state sovereign immunity, as articulated by the Supreme Court in *Seminole Tribe of Florida v. Florida*, that "the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states."  517 U.S. 44, 72 (1996).  This principle was applied to the FLSA in *Mills v. Maine*, 118 F.3d 37 (1st Cir. 1997), when the First Circuit held that the Eleventh Amendment barred a FLSA suit brought in federal court against the state of Maine, and in *Alden v. Maine*, 527 U.S. 706 (1999), when the Supreme Court held that a private party could not bring suit against a state in that state's court to enforce the FLSA.  The Sheriff's Department argues that, as a result of the 1999 Act transferring the Department to the Commonwealth, it is immune from the instant suit on such sovereign immunity grounds.

Plaintiffs contend that this Court has jurisdiction over this action because the Massachusetts legislature did not intend to make the Sheriff's Department an "arm of the state" sharing in the Commonwealth's sovereign immunity.  Plaintiffs further assert that, even if the Eleventh Amendment generally protects the Department from suit in federal court, the legislature waived this immunity with respect to FLSA claims made against the Sheriff's Department when it provided that employees would be

"transferred to the commonwealth with no impairment of employment rights held immediately before the transfer date." Mass. Gen. Laws ch. 34B, § 14. Plaintiffs further contend that the right to bring suit under the FLSA is an "employment right" preserved in the legislation, which therefore constitutes a waiver by the Commonwealth for such actions.[3]

### A.  *"Arm-of-the-State" Analysis*

Judges of this Court have previously treated modern Massachusetts Sheriff's Departments as arms of the state entitled to sovereign immunity. *See, e.g.*, *Adams v. Cousins*, No. 06-40117-FDS, 2009 WL 1873584, at *6 (D. Mass. Mar. 31, 2009) (Essex County Sheriff) (Saylor, J.); *Christoforo v. Lupo*, No. 03-12307-RGS, 2005 WL 3037076, at *3 n.3 (D. Mass. Nov. 14, 2005) (Essex

---

[3]  Plaintiffs also argue that the Sheriff's Department has waived its immunity in FLSA actions by defending prior FLSA claims in federal court without raising the Eleventh Amendment. In support of this argument, Plaintiffs point to two cases, one occurring in 1995, before the 1999 Act and consequently irrelevant, and a second in 2000. As to the 2000 case, *Caron v. Cousins*, No. 00-10660-EFH (D. Mass.), Plaintiffs suggest that an immunity defense was never raised. However, in both versions of the Sheriff's answer in that case, he raised the affirmative defense of sovereign immunity under the Eleventh Amendment. Def.'s Answer, Dkt. No. 5 at 5 (Second Affirmative Defense); Def.'s Answer, Dkt. No. 19 at 5 (Second Affirmative Defense). The parties ultimately settled the *Caron* action (which also involved a state law claim) through mediation. As a result there is no basis for finding that the Commonwealth has "waive[d] its immunity through its affirmative conduct in litigation." *Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 25 (1st Cir. 2001).

County Sheriff) (Stearns, J.); *Kelley v. DiPaola*, 379 F.Supp.2d 96, 100 (D. Mass 2005) (Middlesex County Sheriff) (Gorton, J.).

In *Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & the Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56 (1st Cir. 2003), the First Circuit, following the Supreme Court's analysis in *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994), applied a two-step analysis in addressing the question whether a governmental entity enjoys the sovereign immunity of a state.  The first step asks: "Has the state clearly structured the entity to share its sovereignty?"  *Fresenius*, 322 F.3d at 68.  The second step is undertaken "[i]f the factors assessed in analyzing the structure point in different directions"; in which case "the dispositive question concerns the risk that the damages will be paid from the public treasury."  *Id.*  While the legislation transferring the Essex County Sheriff's Department to the Commonwealth would appear sufficiently clear that no elaborate analysis is necessary, I find *Fresenius* useful in addressing the issues presented in this case thoroughly.

1. Structural Factors

It is plain to see that the 1999 Act structured the Sheriff's Department to share in the Commonwealth's sovereign immunity.  The first source examined in *Fresenius* was the entity's enabling act.  *Id.* at 68-69.  The language of the 1999 legislation clearly states that a fundamental change was made to

7

the status of the County and the Sheriff's Department. Plaintiffs argue that the Commonwealth appropriated money to support the Sheriff's Department both before and after Essex County was abolished, and so the Act effected "no change in the status quo" with respect to the Department's independence from the state.  The statutory language indicates that, to the contrary, a significant change was made:  Essex County was abolished and all of its functions and liabilities, including those of the Sheriff's Department, reverted to the Commonwealth. In addition, the Sheriff and all the Department's employees became employees of the Commonwealth.[4]  Nowhere does the 1999 Act indicate that the Department would remain or become a separate entity going forward despite the legislation's sweeping changes. *Compare, infra*, Section III.A.2 (describing the enabling statutes of other entities).

In *Fresenius*, the First Circuit found state court decisions and the performance of governmental functions relevant in determining whether an entity enjoys sovereign immunity.  *See Fresenius*, 322 F.3d at 70-71.  In the sole Massachusetts case research has found on point, *Hurton v. Puorro*, No. 011617, 2006

---

[4] The Commonwealth pays the wages of Sheriff's Department employees and is responsible for withholding applicable taxes. *Cf. Regan v. United States*, 421 F.Supp.2d 319 (D. Mass. 2006) (addressing the applicability of a Medicare withholding exception to sheriff's departments' correctional officers transferred to the employment of the Commonwealth).

WL 540907 (Mass. Super. Ct. Feb. 14, 2006), a state Superior Court Judge found that a claim against the sheriff's department of Middlesex County, which was also abolished pursuant to MASS. GEN. LAWS ch. 34B, § 1, constituted a claim against the Commonwealth.  This is consistent with the larger statutory scheme; the functions of the Sheriff's Department, which include the operation and management of correctional facilities, are fundamentally governmental in nature (although sometimes delegated to private entities).  *See, e.g.*, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-10 (1998) (describing the operation of correctional facilities as a governmental function); *Richardson v. McKnight*, 521 U.S. 399, 407-10 (1997) (same).  In *Fresenius*, the First Circuit ultimately found that the entity at issue there did not enjoy sovereign immunity where there were no court decisions indicating that it was part of the government of Puerto Rico and that its function, the delivery of healthcare, was not uniquely governmental in nature.  322 F.3d at 70-71.  Here, the opposite is true; administration of a public safety entity is a core governmental function.  This function points toward the conclusion that the Department is an arm of the Commonwealth.

Plaintiffs argue that the Commonwealth lacks significant control over the Department, another factor considered in the *Fresenius* analysis.  *Id*. at 71-72.  In advancing this argument,

Plaintiffs cite the Sheriff's status as an elected official, his power of appointment and discipline over employees, his retention of administrative and operational control, his authority to contract with third parties and bargain with employees over their working conditions, and his ability to generate revenue by serving civil process.  To be sure, the Sheriff enjoys some independence in carrying out the Department's mandate, but the features of that independence identified by the Plaintiffs do not necessarily lead to the conclusion that the Department is excluded from the Commonwealth's sovereign immunity.  *See Pastrana-Torres v. Corporacion de Puerto Rica para la Difusión Pública*, 460 F.3d 124, 126-27 (1st Cir. 2006) (finding that the "relevant factors" in the structural analysis "point in different directions" despite the fact that the entity at issue "operates with a significant degree of autonomy from the Puerto Rican government").  When examining state entities, "[g]auging actual control . . . can be a perilous inquiry, an uncertain and unreliable exercise."  *Hess*, 513 U.S. at 47 (noting that although "ultimate control of every state-created entity resides with the State," not all "enjoy Eleventh Amendment immunity").  *See also Fresenius*, 322 F.3d at 72 (finding "indicia of control . . . hardly determinative in view of the [relevant] statutory structure").  Ultimately, however, Plaintiffs fail to demonstrate that the Commonwealth exerts any less control over the Sheriff's

Department than it does over other state agencies that are manifestly arms-of-the-state.

I conclude that the first step of the *Fresenius* "arm-of-the-state" analysis demonstrates that the legislature structured the Sheriff's Department to share in the Commonwealth's sovereign immunity. In the interest of completeness, I will also address the second step of the inquiry regarding fiscal impact of any judgment.

### 2. Payment of Judgments

The second step of the *Fresenius* analysis asks whether the Commonwealth's treasury would be obligated to pay for a judgment. "[T]he prevention of federal-court judgments that must be paid out of a State's treasury" was the "impetus for the Eleventh Amendment." *Hess*, 513 U.S. at 48. Unlike the enabling act at issue in *Fresenius*, 322 F.3d at 72, the 1999 Act made the Commonwealth liable for all debts of the County. MASS. GEN. LAWS ch. 34B, § 5. Plaintiffs have proffered no argument — legal or factual — that the payment of any judgment here would be made from a source other than the Commonwealth.

The regime of Massachusetts's laws and regulations related to the payment of judgments against state entities provides that the Commonwealth is legally responsible for the payment of any judgment against the Department and also lends support to the finding that the Department is structured to be an arm of the

state.  See *Fresenius*, 322 F.3d at 69-70 (considering state statutes, other than the entity's enabling act, as a factor in the court's structural analysis).  Materials submitted by the Attorney General in this case as *amicus curiae* demonstrate that the Commonwealth interprets its laws and regulations as creating such a responsibility and that it has in fact made payments on judgments against the sheriff's departments in the past.

The Comptroller's regulations at 815 MASS. CODE REGS. 5.01-5.11 provide "the procedures by which agencies may preserve the availability of funds and may obtain access to funds for the payment of judgments and settlements."  815 MASS. CODE REGS. 5.01.  An "agency" is defined as "[a]ny agency, department, office, commission, committee, council, board, division, bureau, institution . . ., office or section within any executive or legislative department of the Commonwealth."  *Id.* at 5.02.  The definition does not include "[a]uthorities established by statute such as the Massachusetts Bay Transportation Authority [("MBTA")], the Massachusetts Turnpike Authority,[5] the Massachusetts Water Resources Authority, the Massachusetts Port Authority and local housing authorities."  *Id*.

---

[5] The Massachusetts Turnpike Authority was dissolved pursuant to Act of June 26, 2009 ch. 25.  To date, the Comptroller's regulations do not appear to have been updated to reflect this change.

The statutes establishing the authority entities clearly outline the features of their independence from the state. *See, e.g.*, M<small>ASS</small>. G<small>EN</small>. L<small>AWS</small> ch. 161A, § 2 (establishing the MBTA with the "power to hold property, to sue and be sued in law and equity and to prosecute and defend all actions relating to its property and affairs" and also making it "liable for its debts and obligations"). Those entities are also listed among those "considered to be authorities," defined for purposes of the Commonwealth's lobbying laws, M<small>ASS</small>. G<small>EN</small>. L<small>AWS</small> ch. 3, §§ 39–50, as "any public instrumentality of the commonwealth which is not subject to the supervision and control of either the legislative, executive or judicial departments of state government . . . and which does not receive state appropriations either for operations or the payment of debt obligations." M<small>ASS</small>. G<small>EN</small>. L<small>AWS</small> ch. 3, § 39. The sheriff's departments are not listed among the authorities.

There is no indication in the 1999 Act, or any other relevant statute or regulation, that the county sheriff's departments have any of the features of independence possessed by the MBTA and similar authorities such as liability for their own debts. The legislation abolishing the counties did not describe the Sheriff's Department as "independent" or as an "authority," but rather made clear that the Department was to become part of the Commonwealth. In light of this regulatory and legal structure, the necessary conclusion is that the Commonwealth is

13

responsible for any judgment entered against the Department and that the Department therefore enjoys sovereign immunity.

### B. *Waiver of Sovereign Immunity*

The Eleventh Amendment generally bars private citizens from bringing suits against a state, but "if a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985).  However, "because the Eleventh Amendment implicates the fundamental constitutional balance between the Federal Government and the States," the Supreme Court has held that it will only find waiver of immunity "where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."  *Id.* at 239-40 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)) (internal quotation omitted).

A waiver of sovereign immunity must also be specific to the jurisdiction of federal courts.  That is, "[a]lthough a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment," *Atascadero*, 473 U.S. at 241, and allow for suit in federal Court.  In *Atascadero*, the Supreme Court considered a provision of the California Constitution which stated that "[s]uits may be brought against the State in such

manner and in such courts as shall be directed by law" and concluded that it did "not specifically indicate the State's willingness to be sued in federal court." *Id.* Applying that principle, the Supreme Court in *Atascadero* declined to find a waiver of California's sovereign immunity. *See also Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306-07 (1990) (finding a general statutory consent to suit insufficient to encompass the specific consent to the jurisdiction of federal courts absent a provision explicitly indicating venue could be laid within a "judicial district, established by . . . the United States").

Applying these principles, the First Circuit has declined to find waiver where a statute could be interpreted as either waiving or preserving sovereign immunity. *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 51 (1st Cir. 2003) (holding that an act transferring pending lawsuits to a governmental entity did not waive sovereign immunity with respect to those lawsuits). Here, one possible - but rather strained - interpretation of the Act's language transferring the counties' sheriff's departments to the Commonwealth, "without impairment of . . . rights of employees," might be the legislation preserved the right to bring suit in federal court for violations of the FLSA. But, there is "room" for another, a more plausible, "reasonable construction" — i.e., that the legislature intended to preserve the substantive rights of employees, but not the ability to enforce them directly

in federal courts.[6] As a result, I find the 1999 Act does not constitute an unambiguous waiver of the Commonwealth's sovereign immunity.

## IV. CONCLUSION

For the foregoing reasons, I conclude that the Sheriff's Department is entitled to immunity from suit in federal court, and that the Commonwealth has not waived such immunity with respect to the instant suit brought by employees of the Sheriff's Department under the FLSA. The motion to dismiss (Dkt. No. 39) is GRANTED.[7]

                                                         */s/ Douglas P. Woodlock*
                                                         DOUGLAS P. WOODLOCK
                                                         UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs speculate that the legislature would have taken "an extraordinary political risk in extinguishing" the employees' rights under the FLSA and other federal employment laws. This extraordinary argument would make a calculus of political advantage an element of statutory construction. I am aware of no precedent for doing so. In any event, as the Secretary of the United States Department of Labor observed in an *amicus* brief submitted in this case, "[s]tate and local government employers are covered by the FLSA's wage protections." While the "doctrine of state sovereign immunity bars private lawsuits against states for damages under the FLSA," it does not bar enforcement by the federal Department of Labor. As a result, the rights were not destroyed when the Sheriff's Department was transferred to the Commonwealth, although the mechanisms for enforcing those rights became more limited.

[7] I note with appreciation the willingness of the Attorney General of the Commonwealth and the Secretary of the United States Department of Labor to accept my invitation to submit *amicus curiae* briefs in connection with this motion. While the motion was ably presented by special counsel for the Sheriff's Department, the very thoughtful *amicus* submissions were quite helpful in putting the immediate controversy in its larger context.